IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BERTIS E. VALENTINE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-1801 |
| | § | |
| NATIONAL OILWELL VARCO, L.P., | § | |
| | § | |
| Defendant. | § | |

<u>**MEMORANDUM AND RECOMMENDATION**</u>

Pending before the court[1] is Defendant's Motion for Summary Judgment (Doc. 24). The court has considered the motion, Plaintiff's response (Doc. 28), Defendant's reply (Doc. 31), all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion be **GRANTED IN PART and DENIED IN PART.**

## I. Case Background

Plaintiff filed this suit against his former employer, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623.[2] Plaintiff claims that he was discriminated against on the basis of age and disability.[3]

Plaintiff began working as a machine operator on April 29,

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. <u>See</u> Doc. 4, Ord. Dated July 7, 2015.

[2] <u>See</u> Doc. 1, Pl.'s Compl.

[3] <u>See</u> <u>id.</u>

1968, for Reed Hycalog, a company that was later acquired by Defendant.[4]  Plaintiff worked in the steel machining group, and his most recent position was machine operator III.[5]  On October 29, 2008, Plaintiff injured his neck and knee while working.[6]  Plaintiff continued to work, while injured, through June 2010.[7]  On May 20, 2010, Plaintiff requested a continuous leave of absence beginning June 7, 2010, with an undetermined end date.[8]  Upon requesting this leave of absence, Plaintiff signed a form acknowledging Defendant's leave policies, including the following: for medical leave due to a work-related injury, Defendant required a letter from a physician certifying that the employee was able to return to work before the employee could work again, and the maximum period for a medical leave of absence was one year.[9]  On June 7, 2010, Plaintiff underwent an exterior cervical discectomy for his neck.[10]

During his leave of absence, Plaintiff received treatment from Kenneth G. Berliner, M.D. ("Dr. Berliner") and David W. Wimberley,

---

[4]     See Doc. 28-1, Ex. A to Pl.'s Resp., Dep. of Pl. pp. 10-11.

[5]     See Doc. 26-3, Ex. C to Def.'s Mot. for Summ. J., Decl. of McCaffrey ¶¶ 4, 8.

[6]     See Doc. 28-1, Ex. A to Pl.'s Resp., Dep. of Pl. pp. 50-51, 56.

[7]     See id. pp. 54-61.

[8]     See Doc. 26-10, Ex. J to Def.'s Mot. for Summ. J., Request for Leave of Absence p. 1.

[9]     See id.

[10]    See  Doc. 28-1, Ex. A to Pl.'s Resp., Dep. of Pl. pp. 22, 30.

M.D. ("Dr. Wimberley").[11]  Dr. Wimberley performed Plaintiff's surgery and initially treated Plaintiff following the surgery.[12] In September 2010, Plaintiff began seeing Dr. Berliner, who took over as Plaintiff's primary caregiver in November 2010.[13] Plaintiff testified that although Dr. Wimberley believed he could return to work in November 2010, Dr. Berliner did not want him to return to work until his therapy was completed, and would not clear Plaintiff to work.[14]

In February 2011, Plaintiff began a dialogue with Lara Isaacs ("Isaacs"), a human resources manager for Defendant, about returning to work.[15]  Isaacs averred that Plaintiff communicated with her "at least half a dozen times" from February 2011 through June 2011.[16]  Isaacs averred that she would typically inquire if Plaintiff had a doctor's release to return to work, and Plaintiff always answered that he had not received one, but that he hoped his doctor would clear him at the next appointment.[17]  Plaintiff testified that he conveyed to Isaacs that he believed he could

---

[11]    See Doc 26-12, Ex. L to Def.'s Mot. for Summ. J, Dep. of Pl. p. 37.

[12]    See id. pp. 29, 37.

[13]    See id. p. 37.

[14]    See Doc. 28-1, Ex. A to Pl.'s Resp., Dep. of Pl. pp. 29, 32-33, 37.

[15]    See Doc. 26-11, Ex. K to Def.'s Mot. for Summ. J., Decl. of Lara Isaacs ¶¶ 2, 4.

[16]    Id. ¶ 4.

[17]    See id.

return to light duty work after receiving a release from his
doctor.[18]   Isaacs sent Plaintiff a letter two weeks before the end
of his one-year protected period of employment expired, notifying
him that he would be terminated, effective June 6, 2011.[19]   Isaacs
averred that she also contacted Plaintiff during this time and that
he continued to repeat that he had not obtained a medical release
and did not know when he would receive such release.[20]   Plaintiff
was terminated on June 7, 2011, at age sixty-two.[21]

   In July 2011, Dr. Berliner sent a letter to Defendant stating
that Plaintiff was able to return to work on May 17, 2011, and
urging Defendant to rehire Plaintiff.[22]   Isaacs averred that this
letter was inadequate to allow Plaintiff to return to work because
it was untimely and did not contain any details about limitations
or restrictions on Plaintiff's employment to demonstrate that Dr.
Berliner was aware of the functional capacity Plaintiff would need
to perform his job.[23]   The summary judgment record also contains a

---

[18]      See Doc. 26-12, Ex. L to Def.'s Mot. for Summ. J., Dep. of Pl. pp.
65, 69.

[19]      See 26-11, Ex. K to Def.'s Mot. for Summ. J., Decl. of Isaacs ¶ 4;
Doc. 28-3, Ex. C to Pl.'s Resp., Termination Letter p. 1.

[20]      See Doc. 26-11, Ex. K to Def.'s Mot. for Summ. J., Decl. of Isaacs
¶ 6.

[21]      See id. ¶ 9; Doc. 28-6, Ex. F to Pl.'s Resp., Charge of
Discrimination p. 1.

[22]      See id. Doc. 26-11, Ex. K to Def.'s Mot. for Summ. J., Letter from
Dr. Berliner p. 4.

[23]      See Doc. 26-11, Ex. K to Def.'s Mot. for Summ. J., Decl. of Isaacs
¶ 7.

note from Dr. Wimberley dated March 3, 2011, that stated that Plaintiff could resume regular work duties, but could "only [work] eight hour days and [was] not to exceed a fifty-five pound lifting limit."[24]   Plaintiff concedes that he gave this document to his attorneys but not to Defendant.[25]

George McCaffrey, a Health, Safety, and Environmental Manager for Defendant, averred that at the time Plaintiff took medical leave in June 2010, the steel machining group consisted of thirty-two employees, but on the date of Plaintiff's termination, the group consisted of twenty-four employees of whom four were in their sixties, five were in their fifties, and seven were in their forties.[26]   McCaffrey also averred that the group never rose above twenty-five employees after the date of Plaintiff's termination because many of the functions formerly performed by the steel machining group in Conroe, Texas, were moved to Singapore.[27]   After Plaintiff's termination, the first person hired into Plaintiff's former group was Peter Olson, who was sixty at the time Plaintiff

---

[24]     Doc. 28-2, Ex. B to Pl.'s Resp., Release from Dr. Wimberley p. 1.

[25]     See Doc. 26-12, Ex. L to Def.'s Mot. for Summ. J., Dep. of Pl. pp. 167-68.  Plaintiff brought a personal injury lawsuit against Defendant in August 2010, seeking compensation for his workplace injuries.  See Doc. 26-5, Ex. E to Def.'s Mot. for Summ. J., Pl.'s Original Pet. & Jury Demand pp. 1-4.  This lawsuit settled in October 2013 for a confidential amount.  See Doc. 26-7, Ex. G to Def.'s Mot. for Summ. J., Settlement Agreement pp. 1-10.

[26]     See Doc. 26-3, Ex. C to Def.'s Mot. for Summ. J, Decl. of McCaffrey ¶ 8.

[27]     See id.

was terminated, and was hired as a machinist.[28]

In Plaintiff's deposition, Plaintiff provided the names of several people he believed were moved into his position, including Noah Nichols, Shannon Sauer, and Efrem Boykins.[29] McCaffrey averred that Shannon Sauer, a machine operator IV, was sixty at the time of Plaintiff's termination; Noah Nichols, a machinist, was fifty at the time of Plaintiff's termination; and Efrem Boykins worked in the IT department, not Plaintiff's group.[30] McCaffrey averred that none of these employees replaced Plaintiff, that no one was hired or promoted into Plaintiff's position, and that Plaintiff's position was eliminated.[31] After Plaintiff's termination, three entry level machine operators were hired for machine operator I positions.[32]

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 1, 2011, alleging that he was discriminated against based on his age and disability.[33] Plaintiff later requested a right to sue letter, and

---

[28]   See id. ¶ 9.

[29]   See Doc. 26-12, Ex. L to Def.'s Mot. for Summ. J., Dep. of Pl. pp. 45-46, 161-64.

[30]   See Doc. 26-3, Ex. C to Def.'s Mot. for Summ. J., Decl. of McCaffrey ¶¶ 4, 7.

[31]   See id. ¶ 4.

[32]   See Doc. 28-5, Ex. E to Pl.'s Resp., Def.'s Obj. & Ans. to Pl.'s 1st Set of Interrogatories p. 9.

[33]   See Doc. 28-6, Ex. F to Pl.'s Resp., Charge of Discrimination pp. 1-2.

received it on April 6, 2015.[34]

On June 24, 2015, Plaintiff filed his complaint, asserting claims under the ADA and ADEA.[35]  Defendant filed the pending motion for summary judgment on June 10, 2016.[36]

## II.  Legal Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings,

---

[34]    See Doc. 26-21, Ex. U to Def.'s Mot. for Summ. J., Notice of Right to Sue p. 1.

[35]    See Doc. 1, Pl.'s Compl.

[36]    See Doc. 24, Def.'s Mot. for Summ. J.

depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  Celotex Corp., 477 U.S. at 322.  In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial.  Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."  Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts."  Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory allegations, unsubstantiated assertions, improbable inferences,

unsupported speculation, or only a scintilla of evidence will not carry this burden.  Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).  The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.

### III. Analysis

### A.  ADA Claim

Title I of the ADA prohibits discrimination by employers against qualified individuals with disabilities "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a); see also Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 360-61 (2001).  Discrimination against a qualified individual on the basis of disability includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."  42 U.S.C. § 12112(b)(5)(A).

An employer must provide reasonable accommodations to an otherwise qualified person with a disability unless the employer can show that the accommodation "would impose an undue hardship" on

9

the employer.  42 U.S.C. § 12112(b)(5)(A).  The employee bears the burden of requesting a reasonable accommodation.  <u>Jenkins v. Cleco Power, LLC</u>, 487 F.3d 309, 315 (5th Cir. 2007).  After the employee requests an accommodation, "the employer and the employee should engage in a flexible, interactive discussion to determine the appropriate accommodation."  <u>EEOC v. Agro Distribution, LLC</u>, 555 F.3d 462, 471 (5th Cir. 2009).  Where the breakdown of the interactive process is attributable to the employer's unwillingness to make a good faith effort to reasonably accommodate a qualified employee, the employer violates the ADA.  <u>Loulseged v. Akzo Nobel Inc.</u>, 178 F.3d 731, 736 (5th Cir. 1999).  However, the employer will not be found liable where the breakdown in the accommodation process is attributable to the employee.  <u>Id.</u>

A plaintiff claiming a violation of the ADA with only circumstantial evidence must meet the burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) by making a prima facie showing that (1) he is disabled; (2) he is qualified for his job; (3) he was subjected to an adverse employment action on account of his disability; and (4) that he was replaced by, or treated less favorably than, non-disabled employees.  <u>EEOC v. Chevron Phillips Chem. Co., LP</u>, 570 F.3d 606, 615 (5th Cir. 2009).  Once a plaintiff has made this showing, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action.  <u>Id.</u>  After the employer has done

so, the plaintiff must show that the employer's reason is either pretextual or that the employer's articulated reason for the adverse action was only one reason for the adverse action and the employer was also motivated to take the adverse action due to the plaintiff's disability.   Id.

Turning to the first element, Plaintiff may adduce evidence that he is disabled by showing that he: (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such impairment.   Atkins v. Salazar, 677 F.3d 667, 675 (5th Cir. 2011).   It appears undisputed that Plaintiff has neck and knee problems that affected his ability to work.   Working is considered a major life activity.[37]   Therefore, Plaintiff meets the Atkins criteria.

Plaintiff must next show that he is a "qualified individual" under the ADA by offering evidence that he, "with or without reasonable accommodation, can perform the essential functions of [his] employment position . . . ." 42 U.S.C. § 12111(8).   The ADA counsels that once a request for accommodation has been made by an employee, it may be necessary for the employer to initiate an informal, interactive process in order to craft a reasonable accommodation.   Silva v. City of Hildalgo, Tex., 575 F. App'x 419, 423 (5th Cir. 2014)(unpublished).   However, a person who cannot

---

[37]     See 42 U.S.C. § 12102(2)(A).

perform any of the functions of his position is not a "qualified individual" under the ADA because "[i]ndefinite leave is not a reasonable accommodation." Amsel v. Tex. Water Dev. Bd., 464 Fed. App'x. 395, 400 (5th Cir. 2012)(unpublished); see also Delaval v. Ptech Drilling Tubulars, L.L.C., 824 F.3d 476, 481 (5th Cir. 2016)("Time off, whether paid or unpaid, can be a reasonable accommodation, but an employer is not required to provide a disabled employee with indefinite leave."); Dorsey v. Boise Cascade Co., 611 F. App'x 212, 213-14 (5th Cir. 2015)(unpublished)("Moreover, 'indefinite leave' until a worker recovers enough to work is not a reasonable accommodation."); Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 760 (5th Cir. 1996)("[R]easonable accommodation does not require [an employer] to wait indefinitely for [the employee's] medical conditions to be corrected . . . .")(citation omitted). Whether someone is a qualified individual is measured at the time of termination from his position. Amsel, 464 F. App'x. at 400; Dorsey, 611 F. App'x. at 214.

Here, Plaintiff argues that he is a qualified individual who was not reasonably accommodated because he "performed his job well for over forty years" and because he was not seeking indefinite leave.[38] Defendant argues that Plaintiff was not a qualified individual because he was not released by Dr. Berliner to return to

---

[38]    Doc. 28, Pl.'s Resp. p. 16.

work before his termination and that indefinite leave is not a reasonable accommodation.

In his response, Plaintiff argues that he wanted to return to work and that he obtained a release from Dr. Wimberley in March 2011. However, Isaac's declaration and Plaintiff's deposition both confirm that Defendant was not made aware of this release before Plaintiff's termination. As Defendant's company policy required a release from a physician to return to work, as far as it knew, Plaintiff was not qualified to perform the essential functions of his position at the time of his termination.

Moreover, even if the court were to proceed with the McDonnell Douglas analysis, Plaintiff's claim fails because indefinite leave is not a reasonable accommodation. In his conversations with Isaacs, Plaintiff never gave her a definite time by which he would be able to return to work. Recent Fifth Circuit case law definitively states that indefinite leave is not a reasonable accommodation. See, e.g., Amsel, 464 F. App'x. at 400. It is undisputed from the evidence provided by both parties that Plaintiff never provided Defendant with a definite return date prior to his termination.[39] Therefore, Plaintiff has not shown a case of prima facie disability discrimination, and Plaintiff's ADA claim based on his termination fails.

---

[39]    See Doc. 26-11, Ex. K to Def.'s Mot. for Summ. J., Decl. of Isaacs ¶ 6; Doc. 26-12, Ex. L to Def.'s Mot. for Summ. J., Dep. of Pl. pp. 233-35.

**B.  ADEA Claim**

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate . . . because of such individual's age." 29 U.S.C. § 623(a)(1). "To establish an ADEA claim, a plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the but-for cause of the challenged employer decision." Moss v. BMC Software, Inc., 610 F.3d 917, 922 (5th Cir. 2010)(quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009)(internal quotations omitted). When a plaintiff presents credible, direct evidence that discriminatory animus was a substantial factor in the contested employment action, the burden of proof shifts to the defendant to establish by a preponderance of the evidence that, regardless of the forbidden factor, the defendant would have taken the same action. Brown v. E. Miss. Elec. Power Ass'n., 989 F.2d 858, 861 (5th Cir. 1993).

In the absence of direct evidence of age discrimination, the Fifth Circuit analyzes ADEA claims under the modified burden-shifting framework of McDonnell Douglas. Moss, 610 F.3d at 922 (quoting Berquist v. Wash. Mut. Bank, 500 F.3d 344, 349 (5th Cir. 2007)); see also Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003) (modifying McDonnell Douglas, 411 U.S. 792); but see Gross v. Fin. Servs., Inc., 557 U.S. 167, 174-75 n.2 (noting, in dicta, that the U.S. Supreme Court had never decided whether the burden-shifting

14

framework applies to ADEA claims and declining to do so in that case).

To establish a prima facie case of discrimination under the ADEA, a plaintiff must show that he: (1) was terminated; (2) was qualified for his position; (3) belonged to the protected group of persons over the age of forty, and (4) was replaced by someone younger or outside the protected group or was otherwise discharged because of his age. Jackson v. Cal-W. Packaging Corp., 602 F.3d 374, 378 (5th Cir. 2010) (quoting Berquist, 500 F.3d at 349); see also 29 U.S.C. § 631.

Once a plaintiff has established a prima facie case, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its adverse employment action. Moss, 610 F.3d at 922 (quoting Berquist, 500 F.3d at 349). If the defendant satisfies this burden, the plaintiff must "rebut the employer's purported explanation, to show that the reason given is merely pretextual." Id. (citing Jackson, 602 F.3d at 378-79). The ultimate burden of proving intentional discrimination remains at all times with the plaintiff. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

Here, Defendant concedes that Plaintiff has met elements (1) and (3) of the prima facie case because Plaintiff was terminated and was over forty years of age at the time of termination. Defendant argues that Plaintiff has not met his prima facie burden

because he was not qualified for his position at the time of his termination and has not demonstrated that he was replaced with someone younger or outside the protected group. Plaintiff responds that Defendant hired younger workers and replaced Plaintiff with two people who were half his age.

As with Plaintiff's ADA claim, the court here finds that Plaintiff was not qualified for the job because he did not provide a release at the time of his termination, therefore he could not perform the essential functions of his position.

Plaintiff also has not met the fourth element of a prima facie case of age discrimination, requiring that he show that he was replaced with a younger worker or someone outside the protected class. Plaintiff stated in his deposition that "they were eliminating a lot of the older workers and hiring a lot of young workers."[40] Plaintiff also argues that Defendant's evidence showing that three new machine operators were hired into Plaintiff's department after Plaintiff was terminated, two of whom were under thirty, supports his claim of discrimination.[41]

However, McCaffrey averred that no one was hired into Plaintiff's machine operator III vacancy and that this position was

---

[40]    See Doc. 26-12, Ex. L to Def.'s Mot. for Summ. J., Dep. of Pl. pp. 45–46, 161–64.

[41]    See Doc. 28-5, Ex. E to Pl.'s Resp., Def.'s Obj. & Ans. to Pl.'s 1st Set of Interrogatories p. 9.

eliminated.[42]   Three machine operators were hired after Plaintiff

was terminated, but were hired for the machine operator I position,

not machine operator III.[43]   The summary judgment evidence showed

that the machine operator I position, while similar in some

respects to the machine operator III position, required less years

of experience and had fewer job responsibilities.[44]   Therefore, the

court finds that it is undisputed that Defendant was not replaced

with someone younger or outside the protected group.[45]

Plaintiff also cites the fact that Defendant was offered an

early retirement plan as evidence that Defendant was discriminating

on the basis of age.   However, the Fifth Circuit has said that the

use of voluntary early retirement plans by employers is lawful.

Bodnar v. Synpol, Inc., 843 F.2d 190, 192 (5th Cir. 1988)("In

general, an employer's adoption of an early retirement plan does

not create a prima facie case of age discrimination under the

ADEA."); see also 29 U.S.C. § 623(f)(2)(B)(ii).   Plaintiff's

argument fails as he has not provided any evidence to show that the

early retirement plan was offered in bad faith by Defendant.

Because Plaintiff has not made out a case of prima facie age

---

[42]   See id. ¶ 4.

[43]   See Doc. 28-5, Ex. E to Pl.'s Resp., Def.'s Obj. & Ans. to Pl.'s 1st Set of Interrogatories p. 9.

[44]   See Doc. 28-7, Ex. G to Pl.'s Resp., Machine Operator Position Descriptions pp. 1, 3.

[45]   Even if the court finds that there was a factual dispute concerning whether Plaintiff was replaced by a younger person, Plaintiff still fails to show he was a qualified individual.

discrimination, Plaintiff's ADEA claim based on his termination fails.

## C. **Rehire**

Defendant did not move for summary judgment on Plaintiff's claim for rehire; Plaintiff raised the issue of discrimination for failing to rehire him in his response to Defendant's motion.  In its reply, Defendant argued that Plaintiff was not qualified to be rehired because he had not been released to return to work.

To make out a prima facie case for failure to rehire, a plaintiff must show that: (1) he was a member of a protected class; (2) he sought and was qualified for an available employment position; (3) he was rejected for that position; and (4) the employer continued to seek applicants with the plaintiff's qualifications.  McCullough v. Houston Cty. Tex., 297 F. App'x. 282, 286 (5th Cir. 2008)(unpublished)(citing LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 448 (5th Cir. 1996).  There appears to be no dispute that Plaintiff has adequately alleged the first and third elements of a prima facie case.

Turning to whether Plaintiff was qualified for his position, the court finds Defendant's argument that Plaintiff was unqualified unconvincing because, despite Plaintiff's statements in his deposition that he was never released to return to work, the July 2011 release provided by Dr. Berliner cleared Plaintiff to return to work as a machine operator in July 2011.  Therefore, the court

finds that Plaintiff has shown that he was qualified for his position after Defendant received that return-to-work letter.

Turning to element four, whether Defendant continued to seek applicants with the plaintiff's qualifications, the court finds that Plaintiff failed to offer testimony directed to his position. Here, Plaintiff only offers testimony that he sought rehire and that Defendant hired three entry-level machinists. Defendant's evidence demonstrates that Plaintiff's machine operator III position was eliminated, a fact that appears undisputed. In the absence of any testimony raising a fact issue that the entry level positions were comparable to Plaintiff's eliminated position, the court must find that Plaintiff has failed to make out the final element of a prima facie case. Plaintiff's claim of age discrimination based on the failure to rehire also fails.

**D.  Laches**

Alternatively, Defendant argues that the equitable doctrine of laches should bar Plaintiff's claims. In support of its argument, Defendant cited Brown-Mitchell v. Kansas City Power & Light, 267 F.3d 825, 826 (8th Cir. 2001), an Eighth Circuit Title VII case where the plaintiff waited six years before requesting a right-to-sue letter from the EEOC. In that case, there was evidence that the plaintiff failed to cooperate in the EEOC investigation and the defendant was able to show prejudice because many of the witnesses could no longer remember details about the plaintiff's employment

because it had been over eight years since the plaintiff had worked there.

The Fifth Circuit has allowed a defense of laches to be raised in Title VII cases. Bernard v. Gulf Oil Co., 596 F.2d 1249, 1256 (5th Cir. 1979). For laches to apply, "the court must find both that the plaintiff delayed inexcusably in bringing the suit and that this delay unduly prejudiced defendants." Id. In Bernard, the court rejected the defendant's arguments that plaintiffs could have requested a right-to-sue letter earlier and that the plaintiffs slept on their rights, in favor of the plaintiffs' argument that it was "their asserted right to await the completion of the EEOC administrative process." Id. In rejecting defendant's arguments, the court stated, "A plaintiff cannot be penalized for choosing to forgo [the private remedy allowed by 42 U.S.C. § 2000e-5(f)(1)] and electing instead the legislatively and judicially favored method of relying on the administrative processes of the EEOC." Id. at 1257 (citing Occidental Life Ins. Co. v. EEOC, 432 U.S. 355 (1977)).

In this case, Defendant has not provided any evidence to demonstrate that it was unduly prejudiced by any delay in the administrative investigation, or that any such delay was caused the Plaintiff. Plaintiff acted promptly after the receipt of the notice of right to sue letter from the EEOC in bringing the lawsuit. Therefore, the court finds the application of the

equitable doctrine of laches inappropriate.  Defendant's motion should be denied on this issue.

**E.   Damages**

Defendant additionally seeks dismissal of Plaintiff's claims, arguing that he cannot show evidence of damages, and that recovery of damages in this case would be duplicative of Plaintiff's recovery in an earlier lawsuit.  Plaintiff responds that the settlement agreement exempted Plaintiff's claims in this case.  The court finds that the settlement agreement did explicitly exempt Plaintiff's claims in this case.  However, it is unclear from the information provided by the parties what type of damages Plaintiff received from that settlement, and if any portion of that settlement was for back wages or mental anguish.  While there may be some overlap in damages between the two cases, the court does not have enough information to grant summary judgment based on the evidence before it.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** Defendant's motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period

mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 18<u>th</u> day of January, 2017.

_____
U.S. MAGISTRATE JUDGE